1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMEY CHRIS GOODWIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT - 1

Plaintiff Jamey Chris Goodwin ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things: a review of Defendants' public documents, conference calls, and announcements; United States ("U.S.") Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding CytoDyn, Inc. ("CytoDyn" or the "Company"); analysts' reports and advisories about the Company; and information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities that purchased or otherwise acquired CytoDyn common stock between March 27, 2020 and March 9, 2021, inclusive (the "Class Period").  Plaintiff brings claims under the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants CytoDyn, the Company's Chief Executive Officer ("CEO") Nader Z. Pourhassan ("Pourhassan"), and the Company's Chief Financial Officer ("CFO") Michael Mulholland ("Mulholland"), and seeks to recover damages caused by Defendants' violations of the Exchange Act.

2.      CytoDyn is a publicly-traded biotechnology company.  Headquartered in Vancouver, Washington, and incorporated in Delaware, CytoDyn is focused on the development and commercialization of a drug named "Leronlimab" which has long been promoted as a potential therapy for HIV patients.

3.      Since the beginning of the global COVID-19 pandemic, however, CytoDyn has made an about-face and has begun to aggressively tout Leronlimab as a treatment for COVID-19.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

4.      After CytoDyn's pivot to hyping Leronlimab as a treatment for COVID-19, CytoDyn's stock price rose exponentially.  Throughout 2019, CytoDyn's stock traded for less than $1.00 per share.  Upon the pivot to hyping Leronlimab as a COVID-19 treatment, however, CytoDyn's stock price skyrocketed.  The hype hit its peak when CytoDyn shares reached over $10.00 per share on June 30, 2020.

5.      CytoDyn issued numerous press releases, conducted conference calls, participated in interviews, and aggressively utilized several third-party investor relations and stock newsletter services to tout Leronlimab as a potential treatment for COVID-19 and to pump up the stock price of CytoDyn while executives aggressively sold shares.

6.      Indeed, while CytoDyn's stock price was sufficiently pumped with the COVID-19 cure hype, long-term shareholders, including Defendants Pourhassan and Mulholland, dumped millions of shares.  For example, on April 30, 2020, after exercising options to purchase millions of CytoDyn shares at prices less than $1.00 per share, Defendant Pourhassan sold over 4.8 million shares of CytoDyn stock, for over $15.7 million in total proceeds. Defendant Pourhassan's sale was approximately 85% of his total holdings of CytoDyn stock.  In addition, on December 21, 2020, Defendant Mullholland sold over 1.1 million shares for over $5.8 million in total proceeds.  Thereafter, on December 28, 2020, Defendant Mullholland sold over 711,000 shares for over $4.4 million in total proceeds.

7.      In addition to overstating the viability of Leronlimab as a COVID-19 treatment, CytoDyn also engaged in a wrongful scheme with its lender, Iliad Research and Trading L.P. ("Iliad"), and its principal John Fife ("Fife"), whereby Iliad and other Fife entities operated as an unregistered securities dealer for CytoDyn.  In connection with Iliad lending funds to CytoDyn, Iliad obtained a convertible promissory note from CytoDyn and converted the note

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

into newly issued shares of CytoDyn and sold those shares into the public market at a profit, in violation of the dealer registration requirements of the federal securities laws.

8.      Following Defendants Pourhassan's and Mulholland's cash-out of CytoDyn shares at artificially inflated prices, the price of CytoDyn shares dropped precipitously to the detriment of Plaintiff and the class.  The market has learned that CytoDyn's development and marketing of Leronlimab as a treatment for COVID-19 was not commercially viable for CytoDyn.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

11.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the misleading statements entered into this District.

12.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of national securities markets.  All of the transactions in the securities that are at issue in this action took place within the U.S.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

## PARTIES

13.     Plaintiff purchased or otherwise acquired CytoDyn shares at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant CytoDyn is a biotech company based in Vancouver, Washington. CytoDyn's business is primarily focused on the development and commercialization of a drug named Leronlimab.  CytoDyn's stock trades in the U.S. under the symbol "CYDY."

15.     The Company is liable for the acts of the Individual Defendants (defined below) and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.     Defendant Pourhassan is CytoDyn's CEO and a director of the Company.

17.     Defendant Mullholland is CytoDyn's CFO.

18.     Defendants Pourhassan and Mullholland are collectively referred to herein as the "Individual Defendants."

19.     CytoDyn and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

20.     The Class Period begins on March 27, 2020.  On that day, CytoDyn issued two press releases regarding Leronlimab's use in treating COVID-19 patients.  CytoDyn issued a release entitled "Leronlimab Used in Seven Patients with Severe COVID-19 Demonstrated Promise with Two Intubated Patients in ICU, Removed from ICU and Extubated with Reduced Pulmonary Inflammation."  That press release stated:

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

VANCOUVER, Washington, March 27, 2020 (GLOBE NEWSWIRE) – CytoDyn Inc. (CYDY), ("CytoDyn" or the "Company"), a late-stage biotechnology company developing Leronlimab (PRO 140), a CCR5 antagonist with the potential for multiple therapeutic indications, announced today the three-day results post-Leronlimab treatment of the first four patients under an Emergency Investigational New Drug (EIND) granted by the U.S. Food and Drug Administration (FDA). A total of seven patients have been enrolled thus far under EIND in the same leading medical center in the New York City area.

The treatment with Leronlimab is targeted as a therapy for patients who experience respiratory complications as a result of contracting SARS-CoV-2 causing the Coronavirus Disease 2019 (COVID-19). Leronlimab is believed to provide therapeutic benefit by enhancing the immune response while mitigating the "cytokine storm" that leads to morbidity and mortality in these patients.

Bruce Patterson, M.D., Chief Executive Officer and founder of IncellDx, a diagnostic partner and advisor to CytoDyn, said, "IncellDx has developed specific companion diagnostic tests to determine the efficacy and dosing of Leronlimab in these severe cases of COVID-19. We found that patients with severe COVID-19 disease are in the midst of immunologic chaos which includes the cytokine storm. Our companion diagnostics showed that after three days of therapy, the immune profile in these patients approached normal levels and the levels of cytokines involved in the cytokine storm were much improved."

Jacob Lalezari, M.D., Interim Chief Medical Officer of CytoDyn, commented, "These preliminary results give hope that Leronlimab may help hospitalized patients with COVID-19 recover from the pulmonary inflammation that drives mortality and the need for ventilators. A leading medical center in the heart of the New York City epidemic was instrumental in giving the preliminary data."

Nader Pourhassan, Ph.D., President and Chief Executive Officer of CytoDyn said: "We are extremely pleased for the coronavirus patients under the care of the treating medical team and that the FDA is so responsive to advance our Phase 2 clinical trial. I am very hopeful that Leronlimab can help to reduce the rate of mortality among COVID-19 patients with severe symptoms of ARDS and to assist our government to fight this battle."

21.     On March 31, 2020, CytoDyn entered into a Securities Purchase Agreement with Iliad whereby CytoDyn issued a secured convertible promissory note in the initial principal amount of $17.1 million.  Iliad gave consideration of $15.0 million.  The note was secured by all of the assets of CytoDyn, except its intellectual property.  As part of the agreement, Iliad had the option to convert all or part of the outstanding balance into shares of common stock at an

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

initial conversion price of $4.50 per share.  Iliad secured anti-dilution adjustments with the promissory note and the conversion price of the promissory note was made subject to full-ratchet anti-dilution protection, pursuant to which the conversion price would be automatically reduced to equal the effective price per share in any new offering by CytoDyn of equity securities.

22.     At the same time that CytoDyn was entering into the agreement with Iliad, CytoDyn's stock price rose dramatically as it aggressively touted Leronlimab as a treatment for COVID-19.  After trading below $1.00 per share for the entirety of 2019, the price of CytoDyn stock skyrocketed.

23.     Shares of CytoDyn were so actively traded during April 2020 that they accounted for nearly half of all dollar volume on the entire OTCQB Venture Market.  The trading volume of CytoDyn trades in April was $612,566,094.[1]

24.     On April 30, 2020, CytoDyn filed a Form S-3 with the SEC.  The Company registered over 46.3 million shares of common stock for resale by "selling shareholders."  These shares in the offering were largely comprised of converted preferred stock and exercised warrants and stock options.

25.     One of the selling shareholders identified was Iliad.  Pursuant to the Form S-3, Iliad offered 6,300,000 shares that it obtained in connection with the promissory agreement.

26.     Another of the selling shareholders was Bruce Patterson ("Patterson"), the CytoDyn "partner" that boasted of Leronlimab's efficacy in treating COVID-19 in CytoDyn press releases.  In the Form S-3, Patterson registered for sale 400,000 warrants and/or stock

---

[1]  *See*  https://www.benzinga.com/news/20/05/16076196/these-were-the-most-active-securities-on-otc-markets-in-april.

CLASS ACTION COMPLAINT - 7

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

options.  The Form S-3 also noted that Patterson continued to own 169,242 shares following the offering.

27.    Another of the selling shareholders identified in the Form S-3 is Michael McCarthy ("McCarthy").  McCarthy is the former owner of The DreamTeam Group, Mission Investor Relations, LLC, and QualityStocks LLC.  On April 10, 2017, the SEC hit McCarthy and his businesses with an Order Instituting Cease and Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease and Desist Order in connection with improper stock promotion of two pharmaceutical companies, Galena Biopharma, Inc. ("Galena"), and CytRx Corporation ("CytRx").  *See In the Matter of Michael A. McCarthy, The DreamTeam Group, LLC, Mission Investor Relations, LLC, and Qualitystocks LLC*, Administrative Proceeding No. 3-17917, Release No. 10343 (April 10, 2017).  The SEC found that McCarthy and his companies paid writers to post misleading internet articles promoting securities of their publicly traded clients.  *Id.*  The articles purported to be independent when, in fact, they were promotional pieces indirectly funded by the clients. *Id.*  Galena and CytRx were both fined by the SEC for this conduct and paid tens of millions in shareholder settlements in connection with the scheme.  *See In the Matter of CytRx Corporation*, Administrative Proceeding No. 3-17919, Release No. 10345 (April 10, 2017); *In the Matter of Galena Biopharma, Inc., and Mark J. Ahn*, Administrative Proceeding No. 3-17911, Release No. 10337 (April 10, 2017).

28.    On April 30, 2020, after exercising options to purchase millions of CytoDyn shares at prices less than $1.00 per share, Defendant Pourhassan sold over 4.8 million shares of CytoDyn stock, for over $15.7 million in total proceeds.  Defendant Pourhassan's sale was approximately 85% of his total holdings of CytoDyn stock.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

29.     On June 30, 2020, the price of CytoDyn stock hit its Class Period high of $10.01 per share, on a trading volume of over 56 million trades.

30.     In June 2020, CytoDyn remained the most heavily traded security on the OTCQB Market for that month and for the year to date.  The dollar volume for June was $1,031,931,939, which was more than five times greater than the second-most heavily traded security on the OTCQB Venture Market.

31.     On July 24, 2020, CytoDyn entered into a second amendment to the secured convertible promissory note with Iliad.  The second amendment to the Note eliminated the monthly volume limitation on the Investor's sale of Conversion Shares under the Note.

32.     On July 29, 2020, CytoDyn entered into a further agreement with Iliad whereby Iliad would extend credit to CytoDyn in exchange for a $28.5 million Secured Convertible Promissory Note.

33.     On August 17, 2020, CytoDyn issued a press release where it announced that it had requested emergency use approval from the FDA.  The press release stated, in part:

**CytoDyn Submits its Top-line Report from its Phase 2 COVID-19 Trial to the U.S. FDA and Requests Emergency Use Approval**

*The Top-line Report has been sent to the regulatory authorities in Mexico, and will be provided to U.K. MHRA, and E.U. EMA, with requests for emergency use approval*

*CytoDyn (CYDY) is preparing a Phase 3 protocol for Leronlimab use in longhauler COVID-19 individuals*

VANCOUVER, Washington, Aug. 17, 2020 (GLOBE NEWSWIRE) – CytoDyn Inc., ("CytoDyn" or the "Company"), a late-stage biotechnology company announced today it has provided its Top-line Report from its recently completed, randomized, double-blind, Phase 2 trial for COVID-19 patients with mild-to-moderate symptoms to the U.S. Food and Drug Administration (FDA), and requested emergency use approval.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

In addition, CytoDyn has sent its Top-line Report of the Phase 2, mild-to-moderate COVID-19 population, to the regulatory authorities in Mexico and hopes to obtain emergency use approval from the MHRA in the U.K., EMA in the European Union, as well as the regulatory authorities in the Philippines.

Along with the above activities, CytoDyn has been approached by several doctors about a clinical study of Leronlimab in long-hauler COVID-19 individuals. The Company is preparing a Phase 3 protocol and will file it as soon as possible.

Nader Pourhassan, Ph.D., President and Chief Executive Officer of CytoDyn, stated, "We are very motivated to provide Leronlimab to patients throughout the world who are suffering from COVID-19. We believe the statistically significant data of NEWS2 findings, along with impressive safety results (less SAEs or AEs with Leronlimab vs. placebo), from our Phase 2 trial set forth in the Top-line Report provides compelling data in support of Leronlimab's use to fight COVID-19. We are in discussions with several regulatory agencies in other countries and hope to obtain emergency approval for its use. We are in a very exciting period for CytoDyn in regards to the potential role of Leronlimab in three different COVID-19 populations, mild-to-moderate, severe-to-critical, and long-haulers."

34.     The statements made in paragraph 33 are false and misleading because, as would later be revealed, CytoDyn did not actually request emergency-use authorization ("EUA") from the FDA.

35.     On August 20, 2020, Patterson participated in an interview with Dr. Drew Pinsky, where he noted that he thought CytoDyn would move forward with a federal government program aimed at fast-tracking virus treatments, dubbed Operation Warp Speed.  Patterson's comments "went viral" and CytoDyn stock rose 13% to $3.43 on August 21, 2020, and another 12% to $3.84 on August 24, 2020.

36.     Like Galena, CytRx, and McCarthy's entities, CytoDyn has also aggressively employed stock promotion firms that create misleading newsletters and internet postings to hype investment in CytoDyn and promote the use of Leronlimab as a COVID-19 treatment.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

37.     Throughout September 2020, CytoDyn remained the most traded security on the OTCQB Venture Market, with $285,663,617 in Dollar Volume.[2]

38.     Through the use of Company press releases and other information released by CytoDyn's partners, CytoDyn has released, or caused to be released, materially false and misleading statements in violation of the federal securities laws.

## THE TRUTH BEGINS TO EMERGE

39.     Following the pump of CytoDyn stock price and cash-out by Company insiders and long-term shareholders, Defendants' scheme began to unravel.  For instance, on August 26, 2020, *The Wall Street Journal* reported that CytoDyn was not being considered for Operation Warp Speed.  According to a senior administration official interviewed by *The Wall Street Journal,* "CytoDyn had only completed a preliminary qualification for being included in the initiative."  The official said that CytoDyn had submitted information through a so-called CoronaWatch, a program run by the Biomedical Advanced Research and Development Authority, or BARDA, to assess the viability of drugs and therapeutics that might be effective against COVID-19.  Technical experts reviewed the submission and opted not to proceed further at this time, the official confirmed.

40.     Going further, the official noted that the team responsible for reviewing the materials makes clear to companies that submissions are for informational purposes only and do not lead to funding on their own, and that companies must apply to specific grant programs to receive  funding,  which  CytoDyn  has  not  even  done  at  this  time.  *See*

---

[2]   *See*   https://www.benzinga.com/general/biotech/20/10/18025965/traders-have-rotated-into-big-multinational-companies-on-otc-market.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

https://www.wsj.com/articles/small-biotech-stock-cytodyn-soars-on-warp-speed-comment-11598456736.

41.     On the day before the publication of *The Wall Street Journal* article, on August 25, 2020, CytoDyn shares were closed at $3.81 per share.  Following the publication of this article, CytoDyn shares dropped over 17% to $3.15 over the next two trading days.

42.     On September 3, 2020, the SEC filed suit against Iliad, its principal Fife, and related entities, Chicago Venture Partners L.P., St. George Investments LLC, Tonaquint, Inc., and Typenex Co-Investment, LLC.  Calling Fife a "recidivist violator of the federal securities laws," the SEC alleged that these entities violated the mandatory dealer registration requirements of the federal securities laws.  The SEC alleged that Iliad and its related entities, by buying convertible promissory notes, converting the notes into newly issued shares of stock, then rapidly selling those shares into the public at a profit, operated as unregistered securities dealers in violation of the federal securities laws.  *See Securities and Exchange Commission v. John M. Fife, Chicago Venture Partners, L.P., Iliad Research and Trading L.P., St. George Investments LLC, Tonaquint, Inc., and Typenex Co-Investment LLC*, Case No. 1:20-cv-05227, Complaint (N.D. Ill. Sept. 3, 2020).[3]

43.     Through Iliad's actions with respect to CytoDyn, including entering into the convertible promissory note and its amendments, converting the note to newly issued shares of CytoDyn stock, and selling those shares into the market at a profit, Iliad operated as an unregistered securities dealer and generated substantial profits.

44.     On September 16, 2020, Defendant Pourhassan was forced to admit that no formal EUA request was actually made with the FDA, despite the Company claiming for weeks

---

[3] Available at https://www.sec.gov/litigation/complaints/2020/comp24886.pdf.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

that it had done so.  Instead, Pourhassan stated that CytoDyn had asked only for the FDA's opinion, stating "we did not submit a formal letter to FDA saying we want to get Emergency Use Authorization.  We asked them for their opinion and they were not positive about it.  Their reasoning made a lot of sense to us."  *See* Moon Kil Woong, *CytoDyn's Update Provides A Clear Path Towards Approval With Up-Listing Potential Still In The Cards*, TALKMARKETS (Sept. 18, 2020).

45.     On September 17, 2020, CytoDyn was sued in the 11th Judicial Circuit for Miami-Date County, Florida by stock promoter Shift Media Lab for alleged failure to pay for its stock promotion services.  Shift Media Lab vaguely alleged in its complaint that it was providing "services" for CytoDyn for three months at $25,000 per month.  Shift Media Lab was previously listed by CytoDyn in a disclosure statement to the OTCQB Venture Market as providing "Brand Awareness" for CytoDyn.

46.     On November 10, 2020, CytoDyn entered into an amended $28.5 million Secured Convertible Promissory Note with Fife's company, Streeterville Capital LLC, a related entity that was not specifically named in the SEC action against Iliad and Fife.

47.     On November 10, 2020, the day of CytoDyn's further agreement with the Fife entity Streeterville Capital LLC, CytoDyn shares closed at $2.02 per share, representing an approximate 80% decline from the Class Period high.

48.     Through the end of 2020 and the beginning of 2021, CytoDyn continued to aggressively hype Leronlimab as a COVID-19 treatment.  As CytoDyn shares were artificially inflated once again, on December 21, 2020, Defendant Mullholland sold over 1.1 million shares for over $5.8 million in total proceeds.  Thereafter, on December 28, 2020, Defendant Mullholland sold over 711,000 CytoDyn shares for over $4.4 million in total proceeds.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

Moreover, on February 5, 2021, Deborah Celeste Kelly, the wife of CytoDyn Chairman Scott Kelly, filed a Form 144 Notice of Proposed Sale of Securities and listed an "approximate date of sale" as February 1, 2021.  The document lists a sale of over 350,000 shares for over $2.5 million.

49.     Beginning on the Friday after the close of trading on March 5, 2020, and continuing over the weekend, CytoDyn issued a flurry of press releases describing the results of Phase IIb/III data on Leronlimab.  Hidden in press releases with titles like "CytoDyn to File Accelerated Rolling Review with MHRA and Interim Order (IO) with Health Canada for COVID-19" and "CytoDyn's Phase 3 Trial Demonstrates Safety, a 24% Reduction in Mortality and Faster Hospital Discharge for Mechanically Ventilated Critically Ill COVID-19 Patients Treated with Leronlimab," however, was a disclosure that the primary endpoint of the study— lowering all-cause mortality at Day 28—was not statistically significant.  CytoDyn announced that:

> ***Amongst all patients in mITT, the primary endpoint (all-cause mortality at Day 28) was not statistically significant.*** When age adjustment was conducted, the primary endpoint was much closer to statistically significant value. Of note, the reduction of mortality in this population of 65 years and younger leronlimab arm had more than 30% less mortality than placebo and 9% less mortality in participants over 65.
>
> * * *
>
> With the age adjustment analysis in all other major secondary endpoints, there was consistent numerical superiority over the placebo group, with some secondary endpoints approaching statistical significance.

50.     Following the flurry of press releases, CytoDyn was accused of "massaging the data" and squeezing good news out of a failed study, the results of which CytoDyn reportedly sat on pending regulatory discussions.  CytoDyn also focused in on a subgroup that accounted for 62 out of 384 patients enrolled in the CD12 trial and declared a survival benefit.  While the

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
PH.: 206 625-1326

trial involved severe to critically ill patients, the Company touted that mechanically ventilated, critically ill patients saw a 24% reduction in all cause-mortality between the Leronlimab and placebo arms, without breaking down the number of deaths in either group.  *See* https://endpts.com/cytodyn-tries-to-squeeze-positive-news-out-of-a-failed-covid-19-study-and-shares-take-a-beating/.

51.     In the trading days that followed the release of the data, the price of CytoDyn shares plummeted.  After closing at $4.05 on March 5, 2021, CytoDyn shares dropped over 28% to close at $2.91 on March 8, 2021.  On March 9, 2021, CytoDyn shares dropped an additional 19% to close at $2.35.

52.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all those who purchased or otherwise acquired CytoDyn securities during the Class Period and were damaged upon the revelation of the alleged corrective disclosure (the "Class").  Excluded from the Class are the Defendants named herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, CytoDyn securities were actively traded over the counter ("OTC") in the U.S.  While the exact number of Class members is unknown to Plaintiff

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by CytoDyn or its transfer agent and/or OTC Markets and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of CytoDyn;

(c) whether the Individual Defendants caused CytoDyn to issue false and misleading statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

(e)     whether the prices of CytoDyn securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, and joinder of all members is impracticable.

59.     Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **PRESUMPTION OF RELIANCE**

60.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     CytoDyn securities are traded in an efficient market;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company's securities were traded OTC in the U.S.;

(f)     the Company was covered by securities analysts;

CLASS ACTION COMPLAINT - 17

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

(g)   the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(h)   Plaintiff and members of the Class purchased, acquired, and/or sold CytoDyn securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed without knowledge of the omitted or misrepresented facts.

61.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

63.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.   This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.   During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities.

66.     Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of CytoDyn securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire CytoDyn securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

67.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases, and other statements and documents, as described above, including statements made to securities analysts and the media, that were designed to influence the market for CytoDyn securities. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CytoDyn's business and operations.

68.     By virtue of their positions at CytoDyn, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class. In the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted, as described above.

69.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As a senior manager and/or director of CytoDyn, Defendant Pourhassan had knowledge of the details of CytoDyn's internal affairs.

70.     Defendant Pourhassan is liable both directly and indirectly for the wrongs complained of herein.  Because of his position of control and authority, Defendant Pourhassan was able to, and did, directly or indirectly, control the content of the statements of CytoDyn.  As an officer and/or director of a publicly held company, Defendant Pourhassan had a duty to disseminate timely, accurate, truthful, and complete information with respect to CytoDyn's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of CytoDyn securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning CytoDyn's business and financial condition, which were concealed by Defendants, Plaintiff and other members of the Class purchased or otherwise acquired CytoDyn securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or statements disseminated by Defendants, and were damaged thereby.

71.     During the Class Period, CytoDyn securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
PH.: 206 625-1326

CytoDyn securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of CytoDyn securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of CytoDyn securities declined sharply upon public disclosure of the facts alleged herein, to the injury of Plaintiff and Class members.

72.   By reason of the conduct alleged herein, Defendants have knowingly or recklessly, directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.

73.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misleading financial statements to the investing public.

## <u>COUNT II</u>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

74.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.   During the Class Period, the Individual Defendants participated in the operation and management of CytoDyn and conducted and participated, directly and indirectly, in the conduct of CytoDyn's business affairs.   Because of their senior positions, the Individual

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

Defendants knew the adverse non-public information about CytoDyn's current financial position and future business prospects.

76.     As an officer and/or director of a publicly owned company, Defendant Pourhassan had a duty to disseminate accurate and truthful information, with respect to CytoDyn's business practices, and promptly correct any public statements issued by CytoDyn that had become materially false or misleading.

77.     Because of his position of control and authority as a senior director or officer and executive team member, Defendant Pourhassan was able to, and did, control the contents of the various reports, press releases, and public filings that CytoDyn disseminated in the marketplace during the Class Period concerning the Company's business, operational, and disclosure policies.  Throughout the Class Period, Defendant Pourhassan exercised his power and authority to cause CytoDyn to engage in the wrongful acts complained of herein.  Defendant Pourhassan, therefore, was a "controlling person" of CytoDyn within the meaning of Section 20(a) of the Exchange Act.  In this capacity, Defendant Pourhassan participated in the unlawful conduct alleged herein that artificially inflated the market price of CytoDyn securities.

78.     Defendant Pourhassan, therefore, acted as a controlling person of CytoDyn.  By reason of his senior management position and/or being a director of CytoDyn, Defendant Pourhassan had the power to direct the actions of, and exercised the same, to cause CytoDyn to engage in the unlawful acts and conduct complained of herein.  Defendant Pourhassan exercised control over the general operations of CytoDyn and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

79.     As the CFO of a publicly owned company, Defendant Mulholland had a duty to disseminate accurate and truthful information, with respect to CytoDyn's business practices, and promptly correct any public statements issued by CytoDyn that had become materially false or misleading.

80.     Because of his position of control and authority as CFO, Defendant Mulholland was able to, and did, control the contents of the various reports, press releases, and public filings that CytoDyn disseminated in the marketplace during the Class Period concerning the Company's business, operational, and disclosure policies.   Throughout the Class Period, Defendant Mulholland exercised his power and authority to cause CytoDyn to engage in the wrongful acts complained of herein.   Defendant Mulholland, therefore, was a "controlling person" of CytoDyn within the meaning of Section 20(a) of the Exchange Act.   In this capacity, Defendant Mulholland participated in the unlawful conduct alleged herein that artificially inflated the market price of CytoDyn securities.

81.     Defendant Mulholland, therefore, acted as controlling person of CytoDyn.   By reason of his senior management position at CytoDyn, Defendant Mulholland had the power to direct the actions of, and exercised the same, to cause CytoDyn to engage in the unlawful acts and conduct complained of herein.   Defendant Mulholland exercised control over the general operations of CytoDyn and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

82.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by CytoDyn.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

A.      Determining that the instant action may be maintained as a class action under Federal Rule of Civil Procedure 23 and certifying Plaintiff as Class Representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs;

D.      Granting Plaintiff leave to amend its Complaint to conform to the evidence; and

E.      Awarding such other and further relief as this Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  April 9, 2021                                    IDE LAW OFFICE

                                                        s/Matthew J. Ide, WSBA No. 26002
                                                        Matthew J. Ide, WSBA No. 26002
                                                        7900 SE 28th Street, Suite 500
                                                        Mercer Island, WA 98050
                                                        Tel. (206) 625-1326
                                                        email: mjide@yahoo.com

                                                        POMERANTZ LLP
                                                        Jeremy A. Lieberman
                                                        (*pro hac vice* application forthcoming)
                                                        J. Alexander Hood II
                                                        (*pro hac vice* application forthcoming)
                                                        James M. LoPiano
                                                        (*pro hac vice* application forthcoming)
                                                        600 Third Avenue
                                                        New York, New York 10016
                                                        Telephone: (212) 661-1100
                                                        Facsimile: (212) 661-8665
                                                        jalieberman@pomlaw.com
                                                        ahood@pomlaw.com
                                                        jlopiano@pomlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff Jamey Chris Goodwin*

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
PH.: 206 625-1326

Wednesday, March 10, 2021

## CytoDyn (CYDY)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against CytoDyn Inc. ("CytoDyn" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire CytoDyn securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired CytoDyn securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  The attached sheet lists all of my transactions in CytoDyn securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Jamey Chris Goodwin

**Signature**

**CytoDyn Inc. (CYDY)**                                                    **Goodwin, Jamey Chris**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 7/23/2020 | 2,000 | $5.5100 |
| Purchase | 2/25/2021 | 1,500 | $4.9200 |